UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KULDIP SINGH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:24-cv-00533-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 18) |

**INTRODUCTION**

Plaintiff Kuldip Singh ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act. Plaintiff's claim for disability stems from several physical or mental conditions, including arthritis, fibromyalgia, diabetes, depression, back pain, high blood pressure, and high cholesterol. (AR 434.) The matter is currently before the Court on Plaintiff's motion for summary judgment and the parties' briefs, which were submitted without oral argument, to Magistrate Judge Barbara A. McAuliffe. (Docs. 18, 23, 24.)

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a

whole and based upon proper legal standards. Accordingly, this Court will recommend denying Plaintiff's motion for summary judgment, denying Plaintiff's appeal, and affirming the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff protectively filed an application for supplemental security income on July 18, 2016. (AR 19, 395-402.)[1] Plaintiff alleged that he was disabled since October 11, 2017 due to arthritis, fibromyalgia, back pain, high blood pressure, high cholesterol, and depression. (AR 434.) Plaintiff amended his onset date from October 1, 2011 in his 2016 application to October 11, 2017 on advice of counsel. (AR 19, 876.) Plaintiff's application was denied initially on November 4, 2016 and upon reconsideration on January 23, 2017. (AR 263-68; 272-78.) Subsequently, Plaintiff requested a hearing before an ALJ. (Doc. 18 at 2.) Following a hearing, ALJ Nancy M. Stewart (the "ALJ" or "ALJ Stewart") issued an unfavorable decision on May 1, 2019. (AR 16-30.)

The Appeals Council denied Plaintiff's request for review on April 10, 2020. (AR 1-6.) Plaintiff then filed an appeal with the federal district court on December 22, 2020. (AR 950-56.) On March 21, 2022, the Court remanded the case for a new hearing. (AR 959-61.) On August 30, 2022, the Appeals Council vacated the Commissioner's decision and remanded the case to an ALJ on the basis that "[t]he hearing decision does not contain an adequate evaluation of the opinion evidence" because the ALJ "did not consider or articulate the weight provided to the mental opinion from Mary Sadlek, M.D. and Naveen Alam, MD." (AR 967.) The Appeals Council Order (the "AC Order") reasoned that "[b]ecause [the mental opinion from Mary Sadlek, M.D. and Naveem Alam, M.D.] is significantly more restrictive than the residual functional capacity as found in the decision, further consideration of the opinion evidence is warranted." (*Id.*) The ALJ was instructed to "[f]urther consider the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations," "evaluate the treating source opinion

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

pursuant to the provisions of 20 CFR 416.927, and explain the weight given to such opinion evidence," and "[o]btain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." (AR 967-68.)

On April 25, 2023, Plaintiff appeared and testified at a new hearing. (AR 899-920.) On August 17, 2023, the ALJ issued a second unfavorable decision. (AR 870-898). This appeal followed. Plaintiff asks that the Court grant summary judgment in his favor and either remand the case back to the Social Security Administration for payment of benefits, or alternatively to remand for a new hearing with a different ALJ. (Doc. 18 at 15-16.)

**Hearing Testimony**

On April 25, 2023, ALJ Stewart held a telephonic hearing. (AR 899-920.) Plaintiff appeared, represented by attorney Jonathan Pena-Mancinas. (*Id.*) Karen Franz, an impartial vocational expert, also appeared. (*Id.*)

In response to questions from the ALJ, Plaintiff testified that the primary reason why he has not been able to return to work since October 2017 is due to fibromyalgia and other medical issues. (AR 905.) Plaintiff indicated that he worked briefly in 2017 but was laid off. (*Id.*) Plaintiff testified that he had not been able to work a full-time job after the temporary job ended in 2017. (*Id.*)

At the hearing, Plaintiff testified that he experiences "chest pain on the lefthand side, or the righthand side" "most of the time." (*Id.*) He testified that he went to the doctor but "they said nothing related with the heart." (*Id.*) Plaintiff stated that he goes to the doctor for his heart annually and has taken medication for his heart for his "whole life." (AR 905-06.) Plaintiff testified that since February 2021 he has not done any additional surgeries or treatments for his heart, and that the chest pain has remained "the same." (AR 906.) He testified that he is able to walk "a couple of blocks" but then feels "tired." (AR 907.) He provides further that "[i]t doesn't matter what I do . . . I feel tired within five or ten minutes, and I have to sit there or lay down." (*Id.*)

Plaintiff reports that he took medication for his fibromyalgia, but had to discontinue the medication due to side effects. (AR 907-908.) He indicates that he has been "having this pain for

a long time[]" so that he's "kind of just like used to it, " and that the pain in his back is "always there." (AR 908.) Plaintiff describes the pain as "from my neck to the bottom of my back," and that "[w]hen I sit in one position . . . then I start feeling pain within three or five minutes" and needs to change his position, lay down, or get back support. (AR 908.) He reports that he is unable to sit on the edge of the bed without feeling pain in his back. (*Id.*) He testified that he "feel[s] dizzy" when sitting on the floor or standing on his feet, and feels pain in his neck, spine, and lower back within "three minutes" when he washes the dishes. (AR 906.) When asked whether the pain in his back and neck travels to other areas of the body, Plaintiff indicated that he "never noticed those pains," but that "I'm holding the phone right now, my elbow starts feeling pain, you know because it's in one position." (AR 908.) Plaintiff also indicated that he had some pain in his wrist, but did not want to have surgery. (AR 916.)

When asked how long he can sit before getting up, Plaintiff indicated that he "can watch TV maybe for 30 minutes. And then after that, you know, I start sleeping," and "[w]hen I keep sitting in like in one position, then I start feeling pain in my body, you know, just like from neck to bottom." (AR 909.) In response to a question about how much weight he can lift and carry without hurting himself, Plaintiff responded that he could lift and carry "[m]aybe ten pounds . . . since I got the stent in my heart." (*Id.*) Plaintiff testified that he spends most of the day lying down or sitting on the sofa. (AR 910.)

When asked whether his migraines had gotten better over the years, Plaintiff answered affirmatively and testified that his migraines were "okay," that doctors "checked my head" and "there was nothing found out." (AR 910.) When asked if he still experienced migraines, Plaintiff replied that he did not. (*Id.*) ("No. Yeah. It's not there.")

With regard to mental health issues, Plaintiff indicated that he used to take medication for depression but no longer took them due to negative side effects. (*Id.*) He did not indicate that he was currently receiving any mental health treatment. (*Id.*) When asked how depression affects him on a day-to-day basis, Plaintiff responded that he "never felt happy . . . for maybe 30 years," that he "never smile[s]" or laughs. (AR 910-11.) He responded that he experiences days where he has crying spells. (AR 911) (regarding frequency, "[n]ot daily," "[i]t depends.") Plaintiff

1 testified that he "[s]ometimes" had difficulties getting along with others, such that "if I don't like
2 the person" then he "[doesn't] like to talk to them." (AR 911.) Plaintiff did not testify to any
3 difficulties with concentration or focus and indicated that the was able to stay focused long
4 enough to watch a 30 or 45-minute television show. (AR 912.)

       Plaintiff described his typical day as including washing the dishes, watching television,
laying in bed, sitting on the sofa in the living room, talking to his wife and mother, and going to a
restaurant if needed. (*Id.*) He uses a light vacuum and is able to warm up food in the microwave.
(AR 913.) He is able to bathe and dress himself. (*Id.*) He reported that he tends not to go out to
friends' houses "because everyone's happy, and I go there and they see my . . . sad face over
there. I don't like that." (AR 914.) Plaintiff indicated that he drinks "two or three" alcoholic
drinks at night so he "can get some sleep." (AR 915.)

       Plaintiff indicated that he is not currently taking any pain medications and "just live[s]
with [the pain] because it's not going to go anywhere." (AR 916-17.) He is currently taking
medication for his diabetes. (AR 916.)

       The ALJ elicited testimony from the vocational expert regarding hypothetical questions.
For the first hypothetical, the ALJ asked whether there would be medium work available for
someone of the same age, education, and past work experience as Plaintiff, who was limited to
simple routine tasks in a work environment that remained the same day-to-day in regards to the
physical surroundings and tasks performed, had occasional contact with coworkers and the
general public, occasional teamwork, with reasoning level 1 and 2 jobs only, and no hazardous
work environments, ladders, ropes, or scaffolds. (AR 918.) The vocational expert indicated that
there were jobs that exist in the national economy with these limitations, including wall cleaner,
patient transporter, and machine package sealer. (AR 918-19.)

       On cross-examination, the vocational expert was asked whether an individual who needed
a sit/stand option, alternating every thirty minutes, would be able to perform any of the medium
jobs identified or any other medium work. (AR 919.) The vocational expert testified that the
individual would not be able to perform that medium work, and that the individual would
effectively be at the "light level." (*Id.*) Plaintiff's attorney then asked whether there would be

1   any medium work available if he were to add a limitation that the individual was going to be
2   absent from work two days in an average month and taking unscheduled breaks four times
3   throughout the workday of fifteen minutes each.  (*Id.*)  The vocational expert testified that there
4   would not be any medium work available with that limitation.  (AR 920.)

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

*1.  Opinions of Dr. Alam*

Dr. Alam completed a physical assessment of Plaintiff and prepared a Physical Medical Source Statement, dated October 11, 2018.  (AR 856-59.)  Dr. Alam also completed a mental assessment of Plaintiff and completed a Mental Residual Functional Capacity Questionnaire, dated October 16, 2018.  (AR 860-62.)

Dr. Alam's opinions find that Plaintiff is capable of less than sedentary work.  According to Dr. Alam's Physical Medical Source Statement, Plaintiff's chronic pain, characterized as "polymyalgia of the joints daily," and his depression and anxiety create the following limitations: (1) walking no more than one block without rest or severe pain, (2) sitting no more than 30 seconds at one time, (3) standing no more than five minutes at one time, (4) sitting, standing or walking less than two hours in an eight-hour workday,  (5) the ability to walk around for ten minutes every ten minutes during an eight-hour work day, (6) occasionally lifting or carrying no more than ten pounds, (7) never twisting, stooping, crouching or squatting, (8) never climbing stairs or ladders, (9) requiring a sit/stand option for work, (10) four to five unscheduled breaks in an 8-hour workday for twenty minutes each due to muscle weakness, chronic fatigue, pain/paresthesias and numbness, (11) inability to use his hands for grasping, turning or twisting objects for more than 20% of an eight-hour workday, (12) inability to use his fingers for fine manipulations for more than 20% of an eight-hour workday, (13) inability to use his arms for reaching in front of body and overhead for more than 20% of an eight-hour workday, and (14) a finding that Plaintiff will be "off task" for 20% of an eight-hour workday, resulting in four unplanned absences a month.  (AR 856-59.)

Dr. Alam's Mental Residual Functional Capacity Questionnaire notes that Plaintiff's medical conditions mean that Plaintiff is "able to carry out simple instruction [sic] but not detailed instructions," that Plaintiff "has short term memory loss and would need supervision," that he "[doesn't] like to talk to anybody" and "[doesn't] like critics." (AR 861.) Dr. Alam responds affirmatively to a question that asks whether Plaintiff's behavioral conditions exacerbate his pain, noting only "yes, depression increases pain." (AR 862.) Dr. Alam notes that Plaintiff does not have reduced intellectual functioning, is not a malingerer, and that the limitations detailed therein "started 2008." (*Id.*)

### **The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. Specifically, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 11, 2017, the amended alleged onset date. (AR 876.) The ALJ identified the following severe impairments: myalgias without joint pain, status post coronary catheterization, and depression exacerbated by alcohol use. (*Id.*) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (AR 877.)

Based on a review of the entire record, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 416.967(c). (AR 879.) The ALJ found that Plaintiff can perform simple, routine task in a work environment that does not change from day to day and remains the same with regards to the physical environment and tasks, with occasional contact with coworkers and the public, and incorporating occasional teamwork. (*Id.*) Plaintiff cannot work in hazardous work environments, including working at unprotected heights, operating fast moving or dangerous equipment, or using ladders, ropes, or scaffolds. (*Id.*) Plaintiff can do work incorporating reasoning levels one and two one. (*Id.*) The ALJ found that Plaintiff did not have any past relevant work, but with this RFC there are jobs that exist in significant numbers in the national economy that he can perform, such as a wall cleaner, patient transporter, or machine package sealer. (AR 885-86.) The ALJ therefore concluded that

Plaintiff had not been under a disability since July 18, 2016, the date the application was filed. (AR 886.)

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Social Security Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n.10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citation quotation marks omitted).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of

8

substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## **DISCUSSION[2]**

**A. Compliance with AC Remand Order dated August 30, 2022**

First, Plaintiff asserts that ALJ Stewart harmfully erred by failing to provide "specific and legitimate" reasons "with specific references to the evidence" for rejecting Dr. Alam and Dr. Sadlek's findings of psychological and physical limitations. (Doc. 18 at 3.) Plaintiff argues that the ALJ "completely failed to explicitly address specific limitations enumerated in the AC Order" and that as a result, the ALJ violated the rule of mandate. (*Id.* at 5.)

The Commissioner counters that "neither the AC nor this Court remanded this case to an ALJ to 'explicitly address specific limitations enumerated in the AC Order,'" but simply to allow the ALJ "to reevaluate the medical evidence, including, but not limited to, all the medical-source opinion evidence." (Doc. 23 at 5) (internal citation omitted). The Commissioner states further that the AC "never directed the ALJ to discuss and give reasons pertaining to each specific limitation within the opinions as Plaintiff seems to believe," and that the ALJ's decision complied with the Court's order and AC's directives by considering Dr. Alam's opinions and offering specific and legitimate reasons why the opinions were not persuasive and not entitled to weight. (*Id.*)

To the extent that Plaintiff argues that the ALJ violated the law of the case doctrine or the mandate rule by failing to follow the AC Order, the Court disagrees. The rule of mandate "provides that any district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." *Stacy v. Colvin*, 825 F.3d 563, 568 (9th Cir. 2016) (internal citation and quotation marks omitted).

Applying this generalized principle to the administrative ruling, a plain reading of AC

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

9

Order shows that the language quoted by Plaintiff merely describes Dr. Alam's medical opinion. The AC Order finds that the hearing decision does not contain an adequate evaluation of the opinion evidence, specifically Dr. Alam's decision. (AR 967.) The ALJ is instructed to "[f]urther consider the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations," "evaluate the treating source opinion," "explain the weight given to such opinion evidence," and "[o]btain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." (AR 967-68.) The Court finds that the ALJ's decision adequately follows these instructions. The Court does not find the ALJ's decision violated the AC Order, nor to the extent that such doctrines are applicable, run afoul of the mandate rule.

**B. Treating Physician Rule**

Next, Plaintiff challenges the weight given to his treating physician's medical opinion. Plaintiff argues that the ALR harmfully erred by failing to "defer and afford the 'greatest weight'" on the nature and severity of the Plaintiff's impairment to the treating physician's opinion, over the opinions of non-treating and non-examining physicians.[3] (Doc. 18 at 4.) Plaintiff further contends that the ALR failed to provide "specific and legitimate" reasons for rejecting the treating physician opinion of Dr. Alam. (*Id.* at 7.)

Defendant responds by arguing that the ALJ did offer specific and legitimate reasons for discounting the opinions from Dr. Alam: specifically, that (1) the opinions found extreme physical and mental limitations—including the inability to sit for more than thirty seconds at one time and the inability to stand for more than five minutes at one time—that conflicted with Dr. Alam's routine treatment plan that did not indicate serious ongoing concerns, (2) Dr. Alam's notes do not indicate that he ever recommended such extreme limitations to the Plaintiff, (3) Dr.

---

[3] Defendant points out that Plaintiff's motion for summary judgment considers the opinion to be authored by both Dr. Alam and Dr. Sadlek. (Doc. 23 at 4 n.1.) Defendant notes that contrary to Plaintiff's characterization, only Dr. Alam signed the opinions at issue. (*Id.*) The Court has reviewed the relevant medical opinions and notes that only Dr. Alam signed the opinions. (AR 856-62.) ALJ Stewart characterized the opinions as authored by Dr. Alam only. (AR 883-84.)

10

Alam's findings were inconsistent with the broader record, and (4) Plaintiff routinely presented at odds with Dr. Alam's extreme assessment. (Doc. 23 at 7-9.) Defendant further argues that the ALJ's reasoning was sufficiently specific and Plaintiff's other arguments presents no basis for remand. (*Id.* at 9.)

In evaluating Dr. Alam's opinion, the ALJ reasoned as follows:

> Naveem Alam, M.D., a treating source, signed off on checkbox mental and physical opinions in 2018. In these opinions it was suggested that the claimant has numerous catastrophic physical and mental limitations. These limits include, for example, an inability to postural maneuvers, major manipulative limits in all areas, the need for extra breaks and off-task allowances, and worst possible limits on stress and absenteeism. These opinions get little weight. There is insufficient support. Although these sources treated the claimant, their corresponding treatment plans generally show routine and little changed outpatient services and normal signs in all or most mental, musculoskeletal, cardiopulmonary, and neurological signs. Additionally, the opinions are inconsistent with the broader record. For example, if the claimant were truly "Never" capable of performing these postures then he would be rigidly locked in place and unable to get out of bed or out of a chair. Additionally, medium exertion is more consistent with above-outlined factors like the normal strength, ambulation, and gait signs. Additionally, a greater capacity for manipulation and postures is consistent with the above-outlined factors like the prevalence of normal extremity, coordination, and range-of-motion signs. Furthermore, the prevalence of normal alertness, concentration, memory, and judgement signs is consistent with a greater capacity for performing and sustaining at least simple tasks. Additionally, the prevalence of normal mood, behavior, thought process, and thought content signs is consistent with a better residual capacity for interacting and adapting.

(AR 883-84.)

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2). *See Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

The Court agrees with ALJ Stewart that Dr. Alam's opinions are contradicted by several other medical opinions in the record, who found little indication of such extreme physical or mental impairment. The Court must therefore consider whether the ALJ provides specific and

legitimate reasons for discounting Dr. Alam's opinion. The Court finds that the ALJ adequately provides specific and legitimate reasons that are supported by substantial evidence.

### 1. *Inconsistency with the Broader Record*

First, in listing specific and legitimate reasons for discounting Dr. Alam's opinions, the ALJ noted inconsistencies between Dr. Alam's opinion and the broader record. (AR 884.) She points to the fact that Dr. Alam's treatment plans "generally show routine and little changed outpatient services" and indicate "normal signs in all or most mental, musculoskeletal, cardiopulmonary, and neurological signs." (*Id.*) She notes that the "catastrophic" limitations contained within the opinions are "inconsistent with the broader record," inconsistent with Plaintiff's demeanor, and lack support. (*Id.*) ("[T]he prevalence of normal alertness, concentration, memory, and judgment signs is consistent with a greater capacity for performing and sustaining at least simple tasks. Additionally, the prevalence of normal mood, behavior, thought process, and thought content signs is consistent with a better residual capacity for interacting and adapting.")

The fact that Dr. Alam's opinions are contradicted by other recorded observations regarding Plaintiff's capabilities and the broader record is a clear and convincing reason to not attribute much weight to the opinion. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.")

### 2. *Inconsistency with Other Medical Opinions*

The ALJ considered Dr. Alam's opinions in light of the other medical opinions in the record, including: (1) state agency and consultive opinions from 2012 and 2013, which the ALJ afforded little weight; (2) state agency mental and physical reviewers from 2016 and 2017, afforded little or some weight respectively; (3) a 2016 physical consult, afforded great weight overall; (4) a 2016 mental consult, afforded little weight; (5) a 2018 mental consult by James Murphy, Ph.D., afforded little weight; (6) a consult by Rustom Damania, M.D., from 2018, afforded some weight; (7) a 2018 opinion by treating source Naveem Alam, M.D., afforded little weight; (8) a 2022 mental consult by Stephen Simonian, M.D., afforded some weight; and (9)

12

other third-party opinions, afforded little weight. (AR 882-84.) The ALJ discusses the other doctors' opinions, assigning some or great weight to the 2016 opinions of Dr. Fast (AR 167-78), Dr. Lee (AR 180-192), and Dr. Wagner (AR 724-28), the 2018 opinion by Dr. Damania (AR 756-61), and the 2022 opinion by Dr. Simonian (AR 1174-78).

As noted by the ALJ ("[Dr. Alam's] opinions are inconsistent with the broader record"), the other medical opinions in the record do not support Dr. Alam's findings. (AR 884.) The 2012 medical opinions by Dr. Ocrant (AR 94-102) did not find Plaintiff to have a combination of impairments that is severe, noting that Plaintiff's impairments "do[] not significantly limit physical or mental ability to do basic work activities" and determining that Plaintiff is not disabled. (AR 100-101.) The 2013 medical opinion by Dr. A. Nasrabadi makes the same determination, "affirm[ing] the initial non-severe physical assessment as written" and finding Plaintiff not disabled, (AR 123-31), as does the 2016 opinion by Dr. R. Fast which opines that while Plaintiff's conduction "results in some limitations in [Plaintiff's] ability to perform work related activities," Plaintiff is "able to perform work that is less demanding" than Plaintiff's prior work and Plaintiff's conditions are "not severe enough to keep [Plaintiff] from working." (AR 177-78.) The 2017 opinion by Dr. K. Lee found similarly. (AR 191-92.) The 2016 internal medicine evaluation by Dr. Roger Wagner found that Plaintiff could walk four to five blocks at a time, and that while sitting long periods of time and prolonged bending, lifting, and stooping could exacerbate his back pain, he appeared very comfortable sitting in the appointment. (AR 725.) Dr. Wagner conducted a physical examination, noting that Plaintiff "was very easily able to get up from a chair in the waiting room and walk at a normal speed back to the examination room without assistance." (AR 725.) Plaintiff "sat comfortably and was easily able to get on and off the exam table," could "easily bend at the waist," "demonstrate[d] good dexterity and good flexibility," "appeared very comfortable throughout the entire examination," and had a pleasant demeanor. (AR 725-26.) In his functional assessment, Dr. Wagner found no limitations with normal breaks for maximum standing and walking capacity, no limitations for maximum sitting capacity, no assistive devices were used, a maximum lifting and carrying capacity of fifty pounds occasionally and twenty-five pounds frequently, frequent stooping, no limitations on

1   manipulative activities, and no limitations on workplace environmental activities. (AR 728.) On
2   June 14, 2018, a medical source statement signed by Dr. Rustom F. Damania indicated that
3   Plaintiff was capable of frequently lifting eleven to twenty pounds, could frequently carry twenty-
4   one to fifty pounds, and had no limitations of sitting, standing, or walking during an eight-hour
5   workday. (AR 756-61.)

6         In sum, the ALJ did not err in concluding that Dr. Alam's opinions assessing severe
7   limitations were unsupported by the record, thus providing a specific and legitimate reason to
8   discount the opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)
9   ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and
10  unsupported by the record as a whole . . . or by objective medical findings.")

11               3.   *Substantial Evidence Supports the ALJ's Finding*

12        This Court must uphold the Commissioner's determination that the claimant is not
13  disabled if the Commissioner applied the proper legal standards, and if the Commissioner's
14  findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human*
15  *Servs.*, 812 F.2d 509, 510 (9th Cir. 1987). Substantial evidence is not a high bar. *See Biestek v.*
16  *Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("[W]hatever the meaning of 'substantial' in other
17  contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
18  Court has said, is 'more than a mere scintilla.'") (internal citation omitted).

19        Here, the ALJ determined that Plaintiff's medical records and other medical opinions
20  supported the ALJ's determination to afford little weight to Dr. Alam's opinion. Based on the
21  foregoing, the Court finds that the ALJ's determination is supported by substantial evidence and
22  that the ALJ applied the proper legal standards. To the extent Plaintiff suggests an alternative
23  interpretation of the evidence, this is not sufficient to establish reversible error. If the evidence "is
24  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be
25  upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citing *Burch v. Barnhart*, 400 F.3d
26  676, 679 (9th Cir. 2005)).

27        Plaintiff argues that the ALJ's reasoning is insufficient because her description of other
28  medical opinions uses "vague" or "nearly verbatim" language to afford other medical opinions

weight and reject Dr. Alam's opinion. (Doc. 18 at 7-8.) This argument is not persuasive. The ALJ provided specific and legitimate reasons for affording Dr. Alam's opinions little weight and substantial evidence supports the ALJ's determination. The Court does not find the ALJ's consideration of the other medical opinions to constitute harmful error.

**C. Objective and Subjective Evidence**

Third, Plaintiff argues that the ALJ harmfully erred by overlooking objective and subjective evidence contained within the record that supports Dr. Alam's opinion.

*1. Objective Psychological and Physical Evidence*

Plaintiff argues the ALJ overlooks objective psychological evidence supporting Dr. Alam's opinions, including (1) findings of altered mental status, difficulty following instructions, saccadic pursuit eye movements, as found in 2018 medical notes by Dr. Ernestina Saxon (AR 828-34), (2) findings of depressed mood, anhedonia, insomnia, fatigue, difficulty concentrating, sadness and sad affect, as found in 2017 medical notes by Dr. Alam (AR 781-85), (3) Plaintiff's treatment with Celexa for depression (AR 784, 789), and (4) Plaintiff's Wechsler Memory Scale-4th Ed. score in the "severely impaired range" indicating visual acuity deficits, visual-spatial processing impairment, severe attention problems, impaired executive functioning, and global intellectual impairment. (AR 751-52.)

Additionally, Plaintiff argues that the ALJ overlooks objective physical evidence supporting Dr. Alam's opinions, including (1) findings by Dr. Alam of chronic pain, inability to walk more than one block without rest or severe pain, inability to stand more than five minutes at one time, ability to sit, stand, or walk less than two hours in an eight-hour workday, ability to lift or carry less than ten pounds only occasionally, inability to twist, stoop, crouch, squat, or climb stairs or ladders, limited use of fingers and arms, and lack of focus (AR 856-59), (2) an EKG documenting findings of deep T-wave inversion in the inferior lateral leads (AR 592), (3) a stress test documenting evidence of inferior lateral ischemia (AR 578), (4) a CT of the head, documenting findings of an enlargement of the ventricular system and widening of the sulci consistent with diffuse cortical atrophy (AR 631), (5) a CT of the cervical spine documenting cervical spondylosis at the T12 level with the largest anterior osteophytes (AR 630-631), (6) a

March 7, 2018 head CT documenting findings of volume loss, chronic small vessel ischemic changes, and paranasal sinus disease (AR 811-812), (7) clubbing of nails, and (8) decreased strength and dexterity in the hands (AR 832). (Doc. 18 at 12-13.)

Other objective physical evidence that Plaintiff alleges that the ALJ overlooked includes a number of consistent diagnoses of small vessel disease, acute alcoholic intoxication with complications, episodic headache or migraine which Plaintiff reported to be a 10/10 on multiple occasions (AR 777, 829, 832), confusion, and altered mental status (AR 776, 832-833), bipolar disorder (AR 779), type II diabetes mellitus, essential hypertension, GERD, episodes of recurrent major depressive disorder, psoriasis, abdominal distention and fibromyalgia (AR 794-795), chest wall pain (AR 641), and right hemiparesis (AR 832-833). (Doc. 18 at 13.)

The ALJ does take into consideration the objective and subjective evidence presented and provides specific, clear, and convincing reasons for her conclusions. The ALJ accurately notes that Plaintiff's medically determinable conditions—chronic obstructive pulmonary disease, gastroesophageal reflux disease, diabetes, psoriasis, Dupuytren's contracture in the palm of the right hand near the fourth flexor tendon but without contracture of the finger, dermatitis, fatty liver disease, left hand injury not otherwise specified, cataracts, hypertension, and hyperlipidemia—are either "asymptomatic and controlled with treatment" or were "resolved or became with treatment within less than 12 consecutive months." (AR 876.) The ALJ further notes and cites to Plaintiff's medical records that show "generally well controlled diabetes" and unremarkable labs for the fatty liver condition. (*Id.*) The medical records "generally show normal abdominal, gross gastrointestinal, and gross joint and range-of-motion signs in the objective examination records." (*Id.*) The ALJ takes into consideration Plaintiff's reports of headaches. She notes that the headaches are accounted for as part of Plaintiff's severe heart and alcohol impairments. (*Id.*) Plaintiff's testimony provides that he no longer experiences headaches. (AR 910.) The ALJ notes that "[a]lthough the record contains evidence of ischemia-related heart impairment," "it does not show the necessary degree of exercise tolerance-test abnormalities," "does not confirm the necessary degree and frequency of separate ischemic episodes," or the "necessary degree of confirmed vessel defects/obstructions." (*Id.*)

16

### 2. *Subjective Complaints*

Plaintiff argues that the ALJ overlooked subjective evidence, including (1) Plaintiff's statements that he has suffered from back and neck pain caused by fibromyalgia for several years that prevents him from working, (2) Plaintiff's statements that his experiences fatigue, (3) Plaintiff's reports that he cannot do household chores like washing dishes for more than a few minutes without becoming tired and experiencing muscle pain, (4) his diabetes and high blood pressure interfere with his functioning (Doc. 18 at 14), (5) Plaintiff's testimony that his depression is resistant to treatment, and (6) Plaintiff's subjective descriptions of his mood. (AR 81-84, 910-14.)

The ALJ appropriately evaluates Plaintiff's subjective complaints of pain. In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

The ALJ provided specific, clear, and convincing reasons to discount Plaintiff's subjective complaints regarding his physical impairments. The ALJ determined that Plaintiff fails to include sufficient objective medical confirmation, for example, including evidence of sufficient tender points, rule-out testing, or a clear diagnosis of fibromyalgia. (AR 877) ("the doctor mentioned myalgia but did not clearly diagnose fibromyalgia.") The ALJ also notes that the record lacks medical documentation of the need for a walker, crutches, canes, or mobility devices, or that Plaintiff is unable to independently initiate, sustain, and complete work-related activities involving fine and gross movements. (*Id.*) The ALJ cites to relevant parts of the record that show reports of no use of ambulation devices and a normal range of motion in the hands. (*Id.*) The ALJ considered Plaintiff's complaints of generalized pain, fatigue, headaches, dressed and anxious moods, and heightened sensitivity to pain, among other complaints, citing to exhibits and

hearing testimony. (AR 879.) The ALJ concludes that Plaintiff's statements about the intensity, persistence and limiting effects of these symptoms "are not entirely consistent with the medical evidence" and other evidence in the record. (*Id.*) She notes that the record does not show any myalgia-related surgeries, regular physical therapy or pain management. (*Id.*)

Regarding Plaintiff's heart condition, the ALJ similarly analyzes the record and concludes that the long-term record does not show further operations, regular heart-related hospital visits, consistent outpatient cardiology or heart-related physical therapy. (AR 881.) Most of Plaintiff's examination records show "normal objective heart and lung evaluation signs" and "normal signs in ancillary areas like alertness, speech and skin (as they relate to oxygenation), and lack of edema or atrophy." (*Id.*)

The ALJ points to the lack of objective medical evidence of Plaintiff's subjective complaints of his mental impairments that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. She notes that the 2018 IQ testing is "anomalous and not considered valid" because, in part, "the longitudinal record shows that the claimant's medical sources typically made no mention of objective mental examination abnormalities, or reported normal signs in related areas like memory, intellect, and judgment." (AR 878.) The ALJ further notes that that while the record includes evidence of depression-related impairment and heavy and long-term alcohol use, "even despite the drinking, most of the claimant's medical records show normal speech and behavior signs, as well as normal signs in ancillary areas like mood, eye contact, and cooperation." (AR 878.) Plaintiff's records do not show regular long-term mental hospitalizations, inpatient rehabilitation programs, or regular outpatient counseling. (*Id.*) The records show "good control" of his mood when he had been taking his medications, and "normal objective examination signs in related areas like alertness, attention, concentration, and number manipulation tests." (*Id.*) The ALJ further notes that "[e]ven despite inconsistent and minimal treatment (and heavy drinking), his objective mental examination signs have typically been normal" in areas like appearance, alertness, attention, concentration, mood, affect, behavior, and memory. (AR 882.)

The objective evidence supports the ALJ's finding. The 2016 mental status evaluation by

1  Dr. Mary Lewis regarding Plaintiff's back pain reports Plaintiff's neat, well-kept appearance;
2  "did not present with any involuntary movements or unusual mannerisms"; good eye contact;
3  appropriate facial expressions; "behavior is cooperative and his attitude is pleasant"; regular pace
4  and intensity of language; normal mental activity with thinking "linear, logical, coherent, and
5  goal directed." (AR 718.)  Dr. Lewis noted that Plaintiff's mood was neutral and affect
6  appropriate, and that Plaintiff's capacity "to act purposefully, to think rationally, and to deal
7  effectively with his environment is not significantly impaired." (AR 718.)  The evaluation further
8  found that Plaintiff's "ability to accept instructions from a supervisor and respond appropriately,"
9  "ability to sustain an ordinary routine," "complete a normal workday and workweek without
10 interruptions at a consistent pace," "interact with coworkers," and "deal with various changes in
11 the work setting" is not impaired.  (AR 721.)  Similarly, On June 20, 2018, a psychological
12 evaluation conducted by James Murphy, Ph.D., found that Plaintiff's appearance was "neat and
13 clean" with appropriate grooming; he ambulated without aid or assistance with normal motor
14 activity; he interacted normally throughout the appointment.  (AR 748-49.)  The evaluation found
15 that Plaintiff's Wechsler Memory Scale score was in the severely impaired range.  (AR 751.)  Dr.
16 Murphy opined that Plaintiff does not have restrictions concerning daily activities; problems with
17 concentration, persistence, and pace that could jeopardize his ability to work; and that Plaintiff
18 will not have difficultly responding appropriately to usual work situations.  (AR 753.)

19     Based on the above, the Court finds that the ALJ did not err in the evaluation of the
20 record's objective evidence and Plaintiff's subjective complaints.  The ALJ considers the whole
21 record, including the objective and subjective evidence, cites extensively to the record, and offers
22 clear and convincing reasons supported by substantial evidence to assign little weight to Dr.
23 Alam's medical opinions.  More than a "scintilla of evidence" supports her decision.  *Richardson*
24 *v. Perales*, 402 U.S. 389, 402 (1971).  The Court upholds the ALJ's decision.

## CONCLUSION

26     Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial
27 evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS
28 HEREBY RECOMMENDED as follows:

1. Plaintiff's motion for summary judgment and his appeal from the administrative decision of the Commissioner of Social Security be denied and the agency's determination to deny benefits be affirmed; and
2. The Clerk of this Court be directed to enter judgment in favor of the Commissioner of Social Security, and against Plaintiff Kuldip Singh.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 22, 2025**          /s/ Barbara A. McAuliffe
                                       UNITED STATES MAGISTRATE JUDGE